```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

VICTORIA STEELE,                  )
                                  )
            Plaintiff,            )
                                  )
                                  )   Case No. CIV-20-341-JFH-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff Victoria Steele (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. The Claimant appeals the Commissioner's decision, asserting that the Administrative Law Judge ("ALJ") incorrectly determined she was no longer disabled. For the reasons discussed below, it is the recommendation of the undersigned Magistrate Judge that the Commissioner's decision be AFFIRMED.

### Claimant's Background

The Claimant was 19 years old at the time of the ALJ's decision. She completed her high school education online due to her alleged disability. The Claimant's alleged disability stems from her asthma diagnosis. She does not have a work history because her asthma allegedly prevents her from working.

1

**Procedural History**

On August 13, 2010, the Claimant protectively applied for Supplemental Security Income benefits under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. On September 13, 2010, the Commissioner determined that the Claimant's asthma met the requirements of Listing 103.03. Therefore, she was found to be disabled as of May 21, 2010. In a continuing disability review decision on February 28, 2014, the Commissioner determined that the Claimant was still disabled. On June 7, 2018, the Commissioner determined the Claimant's disability had ceased. This decision was affirmed upon reconsideration. On April 10, 2020, ALJ Thomas Cheffins conducted an administrative hearing via telephone. On May 11, 2020, the ALJ entered an unfavorable decision. The Claimant requested a review by the Appeals Council, which it denied on August 21, 2020. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The Claimant was a child when she was initially found disabled. (Tr. 72). Since the Claimant had previously been found disabled the ALJ first had to conduct a continuing disability review to determine if the Claimant's disability had ended. *See* 20

C.F.R. § 416.994a.[1] The ALJ first must identify the most recent decision that found the Claimant to still be disabled, which is known as the comparison point decision ("CPD"). The ALJ identified the February 2014 determination as the relevant CPD. (Tr. 20). At step one, the ALJ determined there had been medical improvement to the Claimant's impairments since the CPD. At step two, the ALJ determined that the Claimant's asthma no longer met or equaled Listing 103.03. (Tr. 20-21). The ALJ also noted that the Claimant's disability did not meet Listing 3.03, which is the adult listing for asthma. (Tr. 20-21). The ALJ then discussed the six domains of function and determined that the Claimant's impairments did not result in "'marked' limitation in two domains of functioning or 'extreme' limitation in one domain of functioning." (Tr. 21-28). Therefore, the Claimant's impairments at the time of the CPD had

---

[1] The continuing disability review involves three steps. First, the ALJ considers if the claimant has experienced "medical improvement" since the most recent favorable determination (called the "comparison point decision" or "CPD"). If the claimant has not experienced medical improvement, subject to a few exceptions, he must find that the claimant is still disabled. *Id*. § 416.994a(b)(1). Second, if the ALJ finds medical improvement, he will determine whether the claimant's impairment still meets or equals the severity of the Listing it met or equaled at the time of the previous determination. If so, the claimant is still disabled, unless an exception applies. *Id*. § 416.994a(b)(2). Third, if the impairment no longer meets or equals the Listing it previously met or equaled, the ALJ will decide whether the person is currently disabled, considering all of the impairments he now has. *Id*. § 416.994a(b)(3). At this third step, if a child-claimant's current, severe impairments do not meet or equal a listing, the ALJ then must decide whether they "functionally" equal a listing. *Id*. § 416.926a(a). This is done by evaluating his degree of limitation (i.e., extreme, marked, less than marked, or no limitation) in six "domains": (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id*. § 416.926a(b)(1). A child is disabled if he has "marked" limitations in two domains or an "extreme" limitation in one domain. *Id*. § 416.926a(a).

not functionally equaled the listings since June 30, 2018. (Tr. 28). The ALJ then considered the Claimant's current impairments, including those that were not considered in the CPD. (Tr. 28). The ALJ held that the Claimant had not developed any additional severe impairments since the CPD. (Tr. 28). Thus, her only current severe impairment was asthma. (Tr. 28). The ALJ considered the Claimant's asthma in combination with her non-severe impairments and determined that her impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28-30). He also found that the Claimant's current impairments did not functionally equal the listings. (Tr. 30). Thus, the Claimant's disability ended as of June 30, 2018. (Tr. 30).

Since the Claimant had attained the age of 18 since the CPD, the ALJ also analyzed her impairments under the familiar five-step sequential process used to evaluate adult disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] At step two the ALJ again noted

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national

4

that Claimant's asthma was still her only severe impairment. (Tr. 30). At step three he determined that none of her impairments, severe or non-severe, met or equaled a listed impairment. (Tr. 30).

At step four, the ALJ determined the Claimant had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she should avoid moderate exposure to extreme temperatures, excessive wetness and humidity, and irritants such as fumes, odors, gases, and poorly ventilated areas.

(Tr. 31). Since the Claimant had no past relevant work, the ALJ proceeded to step five. (Tr. 34). During the hearing, the ALJ asked the vocational expert ("VE") if jobs existed in the national economy that the Claimant could perform based on the determined RFC. (Tr. 66-67). The VE determined that the Claimant could perform work as a stores laborer and a hand packager. (Tr. 67). The ALJ found this testimony to be consistent with the Dictionary of Occupational Titles and thus concluded that there were jobs available in the national economy which the Claimant could perform. (Tr. 35). Thus, the ALJ concluded that the Claimant's disability

---

economy which the claimant – considering his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

5

ended as of June 30, 2018, and she has not become disabled since that time. (Tr. 35).

## Errors Alleged for Review

The Claimant asserts that the ALJ's decision was not supported by substantial evidence. The Claimant alleges that the ALJ erred in four ways: (1) by finding that her medical condition had improved; (2) by finding that her impairment no longer met or medically equaled a listing and did not functionally equal the listings; (3) by failing to consider all of her current impairments when determining if she met or medically equaled a listing or if she functionally equaled the listings; and (4) by determining a faulty RFC.

## Social Security Law and Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Analysis

**I. The ALJ Properly Applied the Child Continuing Disability Standards and his Determinations were Supported by Substantial Evidence**

The Claimant believes there is no evidence to support that medical improvement did occur and that her impairments still equal the same listing that they did at the time of her CPD. She also argues that the ALJ failed to consider all her current impairments at step three of the analysis. The Claimant believes if the ALJ had properly considered all her impairments, he would have found she was still disabled. For the reasons outlined below, the undersigned judge finds no error in the ALJ's analysis.

**A. The ALJ Cited to Substantial Evidence to Support his Conclusion that Medical Improvement did Occur.**

The ALJ did provide sufficient evidence to support his finding that medical improvement had occurred. (Tr. 20). Medical improvement occurs where there is **any** decrease of severity in one's

7

impairments. 20 C.F.R. 416.994a(c). This determination must be based on "[improvements] in the symptoms, signs, or laboratory findings associated with [the claimant's] impairments." 20 C.F.R. 416.994a(c). The ALJ cites to a plethora of evidence throughout his opinion that supports his conclusion that the Claimant's asthma improved. (Tr. 21-23). The ALJ points to the improvements in the Claimant's lung disease testing. (Tr. 20, 652, 692). He specifically notes that in May of 2016 the Claimant's test indicated severe, markedly reversible, lung disease but her test in October 2017 only indicated "moderate, partially reversable obstructive lung disease, mostly in the small airways." (Tr. 20, 652, 692). The ALJ also points to evidence that in March of 2018, the Claimant herself denied coughing, shortness of breath, wheezing, or chest tightness. (Tr. 22,741).

The Claimant does cite to other evidence which she claims shows there was no improvement, but she fails to show why the evidence cited by the ALJ is not substantial enough to show any improvement, as required under 20 C.F.R. 416.994a(c). The undersigned agrees there is substantial evidence to show that medical improvement occurred as of June 30, 2018.

> **B. The ALJ Properly Determined that the Impairments Found at the Time of the CPD No Longer Medically Met or Equaled Listing 103.03 or 3.03 and That No Impairments Functionally Equaled a Listing.**

At the second step of the analysis the ALJ must determine if the Claimant's impairments still "meet or equal the severity of the listed impairments that it met or equaled before." 20 416.994a(b)(2). In making this determination the ALJ considers the current severity of the Claimant's impairments that were documented in the most recent favorable determination, or the CPD. The ALJ also must use the same listing section used in the favorable determination as it "was written at that time, even if it has since been revised or removed from the Listing of Impairments." 20 C.F.R. 416.994a(b)(2).

The ALJ cited substantial evidence to support his conclusion that the Claimant's impairments no longer meet the severity required for the listing used in the CPD. (Tr. 21-23). The listing used in the CPD was Listing 103.03, which is the childhood listing for asthma. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03 (2014). To meet this listing the Claimant must be hospitalized for asthma at least three times within a 12-month period. The ALJ points out that there is nothing in the record that shows the Claimant met the required number of hospitalizations for Listing 103.03. (Tr. 20, 850). The ALJ also noted that the Claimant's test results did not meet the requirements of Listing 3.03. (Tr. 20).

9

Again, the Claimant points to evidence which she believes shows that she still meets Listing 103.03, including her continued required use of an inhaler and nebulizer, and one required hospitalization. (Tr. 693, 613-14, 852, 853). But the ALJ explained why this evidence was not enough to meet the listing. (Tr. 22-23). Further, the Claimant herself admits that her test results fell below the levels required to meet the Listing 3.03. 20 C.F.R. Part 404, Subpt. P. App. 1.  The evidence cited by the ALJ supports his determination that the Claimant no longer medically met or equaled Listings 103.03 & 3.03.

The ALJ next analyzed whether the Claimant's impairments that were present at the time of the CPD functionally equaled the listings. To determine if the Claimant's impairments have been functionally equivalent to a listing, the ALJ considered six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. 416.926a(d). A claimant's impairments functionally equal the listings if her impairments or combination of impairments result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(d).

The Claimant believes that the ALJ should have found that she had a marked limitation in the domains of moving about and

manipulating objects and in the domain of health and well-being. But as discussed in detail below, the ALJ's determination that the Claimant's impairments did not functionally equal the listings was supported by the record.

The domain of moving about and manipulating objects focuses on one's ability to move from one place to another. 20 C.F.R. 416.926a(j). Generally, a child "should be able to use [their] motor skills freely and easily to get about [their] school, the neighborhood, and the community." 20 C.F.R. 416.926a(j)(2). Some examples of impairments which may – but will not necessarily - indicate a marked limitation in this area include: (1) having trouble climbing upstairs; (2) experiencing muscle weakness; or (3) experiencing joint stiffness that interferes with one's motor activities. 20 C.F.R. 416.926a(j)(3). To support his finding that the Claimant was not limited in this domain, the ALJ pointed to the Claimant's mother's report that the Claimant's physical abilities were not limited. (Tr. 26, 259). The ALJ also noted that the Claimant's teachers reported that she had no issues in this domain. (Tr. 26, 259, 318, 366). This evidence is substantial and properly supports the ALJ's determination that the Claimant does not have a marked limitation in this domain.

The next domain in question is health and physical well-being. This domain considers the "cumulative effects of physical or mental impairments and their associated treatments or

therapies." 20 C.F.R. 416.926a(l). Physical impairments which were considered in the domain of moving about are not considered again for this domain. 20 C.F.R. 416.926a((l). A claimant has a marked limitation in this domain if they are frequently ill. As the ALJ discussed, the medical evidence indicates that the Claimant's asthma no longer caused her to miss class due to frequent illness. (Tr. 28, 368). The ALJ also pointed to evidence which shows that when the Claimant follows her treatment plan, she can manage normal activities. (Tr. 28, 641, 642, 645, 648). This evidence supports the ALJ's conclusion that the Claimant does not have a marked limitation in this domain of functioning. Therefore, she does not functionally meet a listing.

### C. The ALJ Properly Determined That the Claimant's Current Impairments Did Not Medically Meet or Equal A Listing and That No Impairments Functionally Equaled a Listing.

The final step of this evaluation requires the ALJ to examine all of the Claimant's current impairments, including those which were not present at the CPD. 20 C.F.R. § 416.994a. The ALJ must then determine: 1) if the Claimant has a severe impairment or combination of impairments; 2) if the impairments meet or medically equal the severity of "any impairment listed in appendix 1 of subpart P of part 404 of [the] chapter"; and 3) if the impairments functionally equal the listings. 20 C.F.R. § 416.994a.

The ALJ determined that the Claimant had not developed any new severe impairments since the CPD. (Tr. 28). He then went on to

consider the Claimant's other impairments, which include a history of allergic rhinitis and chronic sinusitis, and GERD. (Tr. 28). He cited substantial evidence to support his decision that her allergies were not severe, as the medical records indicated they were merely "mild." (Tr. 28, 694). He also cited evidence which indicated that the Claimant's recent sinus surgeries had helped with her sinusitis, and it was now well controlled with medication. (Tr. 28, 228, 635-36; 663).

The ALJ also analyzed the Claimant's alleged learning disability using the "paragraph B criteria." (Tr. 29). The ALJ also pointed to his previous discussion of functional equivalency, which was relevant here as he properly determined that the Claimant had no new impairments since the CPD. (Tr. 30). This discussion shows that the ALJ properly considered the entire record, including the Claimant's current impairments, when he determined that the Claimant was no longer disabled.

**II.  The ALJ's RFC Determination is Supported by Substantial Evidence**

Because the Claimant attained age 18 after the comparison point decision, the ALJ continued to the adult disability analysis. (Tr. 30). The Claimant asserts that the ALJ made multiple mistakes when formulating the RFC. She claims these mistakes ultimately resulted in a faulty RFC and a step-five finding which was not supported by substantial evidence. The Claimant believes the ALJ

failed to properly consider the full impact of her disabilities, failed to properly consider the medical opinion of Ms. Melinda Scantling, APRN, and failed to properly consider the Claimant's subjective complaints.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *7 (July 7, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

As discussed above, the ALJ did properly consider all of the Claimant's severe and non-severe impairments when he determined

that her disability ended on June 30, 2018. He also properly considered them when he formulated the RFC. (Tr. 31) The evidence which the Claimant relies on to support her arguments primarily consists of her self-reported symptoms. (*See e.g.* Tr. 388, 395) But the ALJ explained that he did not find these self-reported symptoms persuasive because they went against the objective medical evidence. (Tr. 31-33). The ALJ's discussion in this section, coupled with his previous discussion of the Claimant's impairments, shows he fully considered all the Claimant's impairments when he formulated the RFC.

Next the Claimant asserts that the ALJ failed to properly consider the opinion of Ms. Scantling and that he should have included her suggested limitations in the RFC. Under the standards for evaluating medical opinion evidence, which are outlined in 20 C.F.R. §§ 404.1520c, 416.920c, the ALJ does not "defer or give specific evidentiary weight. . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(c)(a). An ALJ considers medical opinions utilizing five factors: (1) supportability, (2) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not

15

limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ must utilize these factors when determining how persuasive he finds the medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Generally, when examining medical opinions, the ALJ must only specifically explain how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking

only the parts that are favorable to a finding of nondisability"). If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ explained his reasoning for rejecting the opinion of Ms. Scantling. He first pointed out that Ms. Scantling was a nurse practitioner, not a pulmonologist. (Tr. 33). Therefore, her opinions regarding the impacts of the Claimant's asthma on her ability to function was outside her specialty. (Tr. 33). He further explained that he found the opinion unpersuasive because:

> The opinion appears to be based on the claimant's subjective complaints and is unsupported by Ms. Scantling's own examination findings of clear bilateral lung fields and no rales or wheezing. Further, the opinion's extreme limitations are inconsistent with the record as a whole, including the claimant's subjective allegations of no congestion, cough, shortness of breath, or wheezing; the other medical opinions; and the claimant's treatment record. Additionally, limitations regarding exposure to driving, heights, moving machinery, and noise are conclusory in nature and are offered without any reference to a related impairment. Limitations regarding interference with attention and concentration are inconsistent with the claimant's own subjective allegations of having no problems with attention or concentration. The suggestion of absences more than four days for month is offered without explanation; and the suggestion of a need to recline or lie down is inconsistent with the claimant's own testimony that lying down makes her symptoms worse.

(Tr. 33). This discussion specifically addresses the supportability and consistency factors, as required by 20 C.F.R. §§ 404.1520c, 416.920c. (Tr. 33). This explanation also points to

specific medical evidence that was contrary to Ms. Scantling's findings. (Tr. 33). Therefore, the ALJ properly found Ms. Scantling's opinion to be unpersuasive.

As for the Claimant's subjective symptoms, the ALJ did adequately address them and how he considered them in formulating the RFC. The ALJ discussed how the objective medical evidence did not support the claimed severity of the Claimant's symptoms. (Tr. 32). He also considered the Claimant's reported physical limitations, such as her inability to climb stairs. But he found this reported limitation to be inconsistent with the record. (Tr. 32).

The above considerations show that there was substantial evidence to support the ALJ's RFC determination and that he properly considered the medical opinion evidence. He explained his reasoning for rejecting the evidence that the Claimant relies on and his reasoning for rejecting the limitations she requests. The evidence relied on by the Claimant throughout her brief is primarily based on her subjective complaints, which the ALJ addressed and found to not be supported by the objective medical evidence. The Claimant's arguments amount to nothing more than an attempt to have this Court reweigh the evidence in her favor, which it cannot do.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief, which shall not exceed ten (10) pages. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 26th day of January, 2023.

_____  
KIMBERLY E. WEST  
UNITED STATES MAGISTRATE JUDGE